UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOR LOPEZ VENTURA,<br><br>                *Plaintiff,*<br><br>v.<br><br>SOUTH SHORE NISSAN LLC and<br>SANTANDER CONSUMER USA INC.,<br><br>                *Defendants.* | Civil Action No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Flor Lopez Ventura, an individual consumer, brings this action for money damages, injunctive relief, and declaratory judgment, seeking redress for unlawful practices relating to her purchase and financing of an automobile.

2. Plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), and New York General Business Law § 349, and also brings causes of action for breach of contract and common law fraud.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 15 U.S.C. § 1640.

4. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and both defendants maintain offices, transact business, and are otherwise found in this district.

1

## THE PARTIES

6. Plaintiff Flor Lopez Ventura is and at all relevant times has been a resident of Roosevelt, New York. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1602(i).

7. Defendant South Shore Nissan LLC (the "Dealership") is the entity listed as the "Seller-Creditor" of the vehicle at issue on the Retail Installment Contract referenced in the instant Complaint and is the trade name of the auto dealership located in Amityville, New York (Suffolk County) that sold the vehicle to Plaintiff.

8. Defendant South Shore Nissan LLC regularly extends consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required. The Dealership is a "creditor" as defined in 15 U.S.C. § 1602(g)(1).

9. Defendant Santander Consumer USA Inc. ("SCUSA") is a Delaware corporation, duly authorized and qualified to do business in New York. Defendant Santander Consumer USA, Inc. is the assignee of the Retail Installment Contract referenced in the instant complaint, memorializing a "credit sale" between Plaintiff and the Dealership. *See* 15 U.S.C. § 1602(h) (defining the term "credit sale").

## FACTS

12. This dispute arises from Defendant Dealership's sale to Plaintiff of a 2019 Nissan Pathfinder, VIN# 5N1DR2MM0KC649861 (the "Vehicle").

13. Plaintiff bought the Vehicle when she visited the Dealership's car lot on or about September 17, 2019.

14. While on the lot, she spotted a vehicle in which she was interested: a Nissan Pathfinder Sport with a sunroof, a "remote start" ability, leather seats, and a hatch door that remotely

15. opened (the "Desired Pathfinder"). The combination of these attributes made the Pathfinder attractive to Plaintiff.

16. An unscrupulous salesman working for the Dealership, "Jay Hernandez," who is a fluent Spanish speaker, won the trust of Plaintiff – who speaks only limited, broken English – and promised to sell her the Desired Pathfinder once she qualified for financing.

17. Eager to purchase the Desired Pathfinder, and encouraged by Hernandez, Plaintiff gave the salesman her personal information in an attempt to gain the necessary approval to purchase the Desired Pathfinder.

18. After giving Defendant Dealership the requested financial information, Plaintiff waited for hours to receive a decision on financing.

19. Ultimately, at the end of the day, Hernandez returned to her with what he described as both "bad news" and "good news." The "bad news," he said, was that Plaintiff did not qualify for financing on the Desired Pathfinder she so badly wanted.

20. Employing a classic bait-and-switch tactic, however, Hernandez then told Plaintiff the "good news": She did qualify for financing on *another* vehicle. According to Hernandez, this other vehicle was "the same" as the Desired Pathfinder. Relying on Hernandez's representation what the vehicle was "the same," Plaintiff agreed to look at the other vehicle promoted by Hernandez.

21. As it turned out, the car proposed by Hernandez was the Vehicle, which is also a Pathfinder. Still, the Vehicle did not possess some of the features Plaintiff liked so much about the Desired Pathfinder. For instance, it was not equipped with the "remote start" ability and did not have leather upholstery. Plaintiff began to waiver, but Hernandez assured her that the Dealership would modify the Vehicle to make it "the same" as the Desired Pathfinder.

21. Specifically, Hernandez promised Plaintiff that the Dealership would equip the Vehicle with remote start and would replace the car's cloth interior with leather.

22. Based on these commitments, Plaintiff agreed to go forward with the purchase of the Vehicle.

23. Plaintiff was then taken to the Dealership's business office, where she was presented with and signed a Retail Installment Contract (the "RIC"). The RIC, dated September 17, 2019, is a SCUSA form and expressly states that is being assigned to SCUSA.

24. The RIC does not comply with federal law. It contains material inaccuracies. For example, the RIC lists the "Amount Financed" as $36,345.71 at an "Annual Percentage Rate" ("APR") of 21.51%, supposedly resulting in 72 monthly payments of $910.67. In actuality, however, those principal and interest figures, carried over 6 years, would yield monthly payments of $902.69. Put differently, when using the APR disclosed by the Dealership, Plaintiff's monthly payment should have been $902.69. Conversely, the $910.67 monthly payment required by the RIC produces an APR of 21.881%. As such, the RIC materially understates the APR.

25. The wrongs committed by the Dealership were not, however, limited to TILA disclosure issues. Before Plaintiff drove off the lot, the Dealership's salesman, Hernandez offered to secure liability insurance for the vehicle.

26. Plaintiff accepted Hernandez's offer and subsequently paid him $800 in cash, but neither Hernandez nor the Dealership ever procured the auto insurance Plaintiff paid for.

27. As a result of Plaintiff's reliance on Hernandez's representation that he was purchasing insurance for her, she allowed her existing insurance with GEICO to lapse.

28. Plaintiff eventually discovered she did not have insurance when the New York Department of Motor Vehicles fined her $370. At that time, it cost her $930 to reinstate her GEICO coverage.

29. Plaintiff confronted personnel at the Dealership when she realized that no one had obtained the insurance for which she had paid.

30. In response, Plaintiff received a $800 check in partial compensation for her loss. However, check was returned for "Insufficient Funds."

31. Plaintiff questioned the Dealership's salesman, Hernandez, about this, but he told her it was the Dealership's problem.

32. Plaintiff incurred other expenses as a result of the Dealership's misconduct. Specifically, she missed several days of work and incurred additional out-of-pocket expenses due to her transportation problems caused by the Dealership's misconduct.

33. Nor did the Dealership honor its promise to make the vehicle the equivalent of the Desired Pathfinder. Although the Dealership attempted to install "remote start" through a third-party, freelance mechanic, that function has never worked properly.

34. Moreover, the Dealership never installed leather seats, refusing to respond to the Plaintiff's attempts to schedule replacement of the cloth seats.

35. To the extent any Defendant herein is not liable in its own right, said Defendant is liable as an assignee (e.g. pursuant to the FTC Holder Rule and/or state law) and/or based on agency principles.

36. As a result of the misconduct set forth herein, Plaintiff has suffered pecuniary harm as well as emotional distress, sleeplessness, acute stress/anxiety, pain and suffering.

## COUNT I
### TRUTH IN LENDING ACT 15 U.S.C. §§ 1601, et seq. ("TILA")
### (AS TO BOTH DEFENDANTS)

37. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

38. Plaintiff's transaction as described in this Complaint was a consumer credit transaction within the meaning of TILA and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

39. The Defendant Dealership is identified as the "Seller-Creditor" in the RIC and is an entity which (1) regularly extends consumer credit payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the entity to which the debt arising from the RIC is initially payable on the face of the RIC. As such, the Dealership is a "creditor" as that term is defined at 15 U.S.C. § 1602(g)(1) and Regulation Z.

40. Plaintiff is a natural person, and she purchased the Vehicle for personal, family, or household purposes. Plaintiff is therefore a "consumer" for purposes of entitlement to all disclosures required by TILA and with regard to entitlement to the Act's protections. *See* 15 U.S.C. § 1602(i) (specifying prerequisites of a consumer credit transaction).

41. The RIC is a contract in which the Dealership, as a creditor, commits to sell to a natural person personal property primarily for personal, family, or household purposes, in which the total amount financed is less than $50,000. Consequently, the RIC evidences a nonexempt "credit sale" for purposes of 15 U.S.C. §§ 1602(h) and 1603(3).

42. In violation of TILA and Regulation Z, the RIC materially misstates the APR for this consumer credit transaction. *See* 15 U.S.C. § 1638(a)(4) (requiring disclosure of a consumer credit transaction's APR).

43. The actual APR imposed by the RIC (21.88%) exceeds by more than one-eighth of one percent the APR disclosed in the RIC (21.51%), and the two APRs do not round to the same one-fourth of one percent.  As such, the materially misstated APR disclosed in the RIC does not fall within TILA's allowable tolerances for purposes of the statute's disclosure requirements.  *See* 15 U.S.C. § 1606(c).

44. Defendant SCUSA is the assignee of the RIC.  SCUSA bears responsibility for the RIC's material misstatement of the APR because the inaccuracy is apparent on the face of the RIC.  *See* 15 U.S.C. § 1641 (setting out assignee liability).

45. For all these reasons, Defendants are liable under TILA and Regulation Z (*see, e.g.,* 15 U.S.C. §§ 1640, 1641) for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, and for such other or further relief as the Court deems appropriate.

## COUNT II
## DECEPTIVE CONSUMER PRACTICES
## NEW YORK GENERAL BUSINESS LAW § 349
## (AS TO THE DEALERSHIP)

46. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

47. The deceptive acts and practices set forth above constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

48. To wit, wholly apart from the facial inaccuracy of the TILA disclosures provided to Plaintiff, Dealership's acts and practices constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce, or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

49. These deceptive acts and practices were committed in conduct of business, trade, commerce, or the furnishing of a service in this state.

50. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

51. The Dealership's conduct and statements described above, through its salesmen and others affiliated with the Dealership, are materially misleading.

52. Specifically, but without limitation, the Dealership's deceptive conduct included (a) using a bait-and-switch tactic to sell Plaintiff the Vehicle, and only after the Dealership finalized the deal by informing Plaintiff that it would modify the Vehicle so that it was the equivalent of the Desired Pathfinder she really wanted; (b) failing and refusing to engage in any meaningful efforts to make the promised modifications to the Vehicle; and (c) collecting $800 from Plaintiff by falsely promising to buy insurance for her, and then failing to obtain the insurance, causing Plaintiff to incur other costs and penalties.

53. As a result of these violations of NYGBL § 349, Plaintiff suffered and continues to suffer pecuniary and non-pecuniary harm.

54. Defendants' violations were willful, knowing, wanton, and committed in bad faith.

55. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1000, punitive damages, costs and reasonable attorney's fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

## COUNT III
## FRAUD
## (AS TO THE DEALERSHIP)

56. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

57. As set forth above, Defendants defrauded Plaintiff by, *inter alia*: (a) using a bait-and-switch tactic to sell Plaintiff the Vehicle, and only after the Dealership finalized the deal by informing Plaintiff that it would modify the Vehicle so that it was the equivalent of the Desired Pathfinder she really wanted; (b) failing and refusing to engage in any meaningful efforts to make the promised modifications to the Vehicle; and (c) collecting $800 from Plaintiff by falsely promising to buy insurance for her, and then failing to obtain the insurance, causing Plaintiff to incur other costs and penalties.

58. Through its conduct, statements, and misrepresentations, the Dealership intended to deceive Plaintiff.

59. Plaintiff believed and justifiably relied upon the Defendants' representations, and she had no reason to know or expect that the Dealership would lie to her and commit fraud.

60. Had the Dealership been truthful about the attributes of the Vehicle, the nature of Plaintiff's obligations and responsibilities, and the terms and contents of the RIC, and had the Defendant not made the fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely.

61. As a result of her reliance on the Dealership, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

62. As a result of Plaintiff's reasonable reliance upon the Defendants' misrepresentations, Plaintiff is entitled to recover her actual damages as set forth above, punitive damages, and costs.

## COUNT IV
## BREACH OF CONTRACT
## (AS TO THE DEALERSHIP)

63. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

64. The Dealership entered into a contract with Plaintiff when it induced her to purchase the Vehicle by promising to make it the equivalent of the Desired Pathfinder.

65. The Dealership has breached that contract by failing and refusing to engage in any meaningful efforts to make the promised modifications to the Vehicle.

66. Because the Dealership has failed and refused to engage in any meaningful efforts to make the promised modifications to the Vehicle, Plaintiff has not received the benefit of her bargain with the Dealership.

67. As a result of the Dealership's breach of its contract with Plaintiff, Plaintiff is entitled to recover her actual damages, as set forth above, and costs.

WHEREFORE, Plaintiff seeks judgement in her favor and damages against Defendants:

    a. Awarding Plaintiff against Defendants actual damages, treble damages, statutory damages, punitive damages, costs and reasonable attorneys' fees; and

    b. Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: January 15, 2020

                                                 */s/Daniel A. Schlanger*
                                                 Daniel A. Schlanger
                                                 Schlanger Law Group LLP
                                                 9 East 40th Street, Suite 1300
                                                 New York, NY 10016
                                                 T: 212.500.6114
                                                 F: 646.612.7996
                                                 E: dschlanger@consumerprotection.net